IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bitter Sweet Properties, LP; BSP Inc.; :
Somerset Enterprises Inc. d/b/a Future :
Building of America; and Ricky A. :
Kennett, :
                  Appellants :
                   :
          v. :
                   :
The City of Farrell; Shenango Valley :
Economic Development Partnership :
Committee for and on Behalf of the :
City of Farrell and also surrounding :
communities in the Shenango Valley :
Participating in the Shenango Valley :
Economic Development Partnsership; : No. 1640 C.D. 2016
and Stephen J. Mirizio, Esquire : Submitted: January 27, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE[1]               FILED:  October 20, 2017


       Bitter Sweet Properties, LP, BSP Inc., Somerset Enterprises Inc. d/b/a

Future Building of America, and Ricky A. Kennett (Appellants) appeal the June 27,

2016 Order of the Court of Common Pleas of Mercer County (trial court) which

---

[1] Currently, there is a vacancy among the commissioned judges of this Court.  Pursuant to our opinion circulation rules, all commissioned judges voted on the opinion and a tie vote resulted. Therefore, this opinion is filed pursuant to Section 256(b) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.256(b).

granted the preliminary objections of the City of Farrell (City), Shenango Valley Economic Development Partnership Committee for and on behalf of the City of Farrell and also surrounding communities in the Shenango Valley participating in the Shenango Valley Economic Development Partnerships (EDP), and Stephen J. Mirizio, Esquire (Mirizio) (Appellees) and dismissed Appellants' complaint with prejudice. Upon review, we affirm in part and vacate in part.

Appellants entered into a transaction with the City and EDP for the purchase of land and construction of a building by means of a construction loan (Transaction). Two separate loan agreements were executed – one between Appellants and the City/EDP (City/EDP Loan) and another between Appellants and Bridgewater Capital (Bridgewater Loan). The Transaction was negotiated and ultimately closed in March 2014. Although the Transaction was memorialized in written, integrated instruments, Appellants nevertheless contended that an oral agreement existed among Appellants, the City and EDP, creating a joint venture. Appellants alleged the oral joint venture agreement was breached by Appellees. Specifically, Appellants alleged that time was of the essence under the oral joint venture agreement and the due diligence period for closing the Transaction went on for so long that it constituted a breach of fiduciary duties imposed by the joint venture. This delay, Appellants contend, gave rise to a contract breach and a number of ancillary tort claims, including alleged professional malpractice claims against the City solicitor, Mirizio, whom Appellants claim was engaged as their counsel.

Appellants filed a civil action with the trial court on May 12, 2015. (Reproduced Record (R.R.) at 6a.) The complaint, which contained 280 separate paragraphs, included eight counts alleging fraudulent inducement, breach of oral contract, breach of fiduciary duty, intentional interference with contractual relations,

2

intentional/negligent infliction of emotional distress, professional negligence and negligence per se against Mirizio, and vicarious liability against the City and EDP. *Id.* at 8a-61a. Appellees filed preliminary objections. The trial court sustained the preliminary objections and dismissed the complaint, stating its "rambling narrative and evidentiary averments fail[ed] to comply with the requirements of Pa.R.C.P. No. 1019, subsections (a), (b), (f), (h) and (i)." *Id.* at 167a.

Appellants filed an amended complaint (First Amended Complaint) on November 5, 2015. (R.R. at 3a.) The First Amended Complaint included 320 paragraphs, many of which contained subparagraphs. *Id.* at 175a-237a. Appellees filed preliminary objections to this First Amended Complaint, after which Appellants filed a second amended complaint (Second Amended Complaint). *Id.* at 4a. The Second Amended Complaint, filed January 7, 2016, contained 229 paragraphs and incorporated by reference 89 paragraphs from the First Amended Complaint. *Id.* at 451a-499a. Preliminary objections were filed by Appellees to this Second Amended Complaint. On June 27, 2016, the trial court "granted"[2] the preliminary objections filed by Appellees and dismissed with prejudice the Second Amended Complaint, concluding it failed to conform to Rule 1019(a), Appellants failed to plead or produce a contract of engagement for legal services with Mirizio, failed to plead facts that evidence the creation of a joint venture relationship, and failed to plead facts to support the remaining causes of action. (Appellants' Brief, Appendix A.) This appeal followed.[3]

---

[2] The trial court used the word "granted" rather than "sustained" in addressing the preliminary objections. (Appellants' Brief, Appendix A, at 1.)

[3] Our review of an order sustaining preliminary objections is whether the law states with certainty no recovery is possible under the facts alleged. *Weaver v. Franklin County*, 918 A.2d 194 (Pa. Cmwlth. 2007). We accept as true all well-pled allegations and material facts averred in the complaint, as well as inferences reasonably deduced therefrom. *Id.*

**Discussion**

The issue before this Court is whether the trial court committed an error of law and/or abused its discretion by sustaining Appellees' preliminary objections pursuant to Pennsylvania Rule of Civil Procedure No. 1019(a) for pleading too many facts and paragraphs, and dismissing Appellants' claims with prejudice.

Preliminary objections should only be granted in cases that are clear and free from doubt. *Gail v. Hammer*, 617 A.2d 23, 24 (Pa. Super. 1992). This Court's inquiry must be to ascertain whether the well-pleaded facts in the complaint, assumedly true, would, if shown, suffice to prove the claims set forth by Appellants. *Yania v. Bigan*, 155 A.2d 343 (Pa. 1959). Amendments to a complaint are liberally permitted in order to allow full development of a party's theories and averments, however, amendments may be properly denied where it appears amendment is futile. *Weaver*, 918 A.2d at 203.

Pursuant to Rule 1019(a), the material facts on which a cause of action or defense is based shall be stated in a concise and summary form. Pa.R.C.P. No. 1019(a). The purpose of Rule 1019(a) is to disclose the material facts sufficient to enable the adverse party to prepare his or her case. *General State Authority v. Sutter Corp.*, 356 A.2d 377, 381 (Pa. Cmwlth. 1976). A complaint must do more than simply give the defendants fair notice of what the claims are and the grounds upon which they rest. *Id.* Material facts are those essential to support the claim. *Id.*

Appellants argue the trial court abused its discretion in dismissing the Second Amended Complaint with prejudice for pleading too many facts, and cite *Commonwealth v. Percudani*, 844 A.2d 35 (Pa. Cmwlth. 2004)[4] as support for this

---

[4] Following a Motion for Reconsideration filed by the Defendants in *Percudani*, this Court amended its order filed February 27, 2004. *See Commonwealth v. Percudani*, 851 A.2d 987 (Pa.

argument. In *Percudani*, this Court determined a 278-page complaint containing 1,957 paragraphs satisfied Rule 1019(a) because a paragraph-by-paragraph review of the complaint allowed each defendant to identify those causes of action against it and its alleged actions. *Id.* at 49. If one considers the 89 paragraphs incorporated by reference from Appellants' First Amended Complaint, with subparagraphs, Appellants' Second Amended Complaint contains 376 separate paragraphs. While the trial court recited the respective length of Appellants' three complaints in its opinion, the Second Amended Complaint did not fail because of its length. Rather, the trial court concluded Appellants' pleadings failed to meet the requirements of the rules of pleading. (Appellants' Brief, Appendix A at 2.) Similarly, the issue for this Court is not whether the number of paragraphs or pages that form Appellants' Second Amended Complaint exceeds an acceptable number. This Court is tasked with ascertaining whether the well-pleaded facts within those 376 paragraphs, if true, would suffice to prove the claims set forth by Appellants. *Yania.*

### Counts 1-3. Fraudulent Inducement, Breach
### of Oral Contract, and Breach of Fiduciary Duty

The elements of fraud in the inducement are as follows: 1) a representation; 2) material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the

---

Cmwlth. 2004). The amendment did not affect the Court's prior determination that the Commonwealth's complaint satisfied the requirements of Pa.R.C.P. No. 1019(a).

reliance. *Eigen v. Textron Lycoming Reciprocating Engine Division*, 874 A.2d 1179, 1185 (Pa. Super. 2005).

Appellants base their claim for "fraudulent inducement" on alleged misrepresentations made by a consultant for the City, Arnold Clebone (Clebone) and the City Manager, Michael Ceci (Ceci). These alleged misrepresentations also form the basis for the claim of breach of oral contract. The oral contract, it is averred, created the alleged joint venture. The viability of Appellants' third count for breach of fiduciary duty relies upon a finding that the parties established a joint venture.

Appellants' specific pleading of fraudulent inducement can be summarized as follows: Appellees made misrepresentations which they did not intend to honor, the misrepresentations were made to induce reliance, Appellants justifiably relied on the misrepresentations, and they were harmed as a result. (R.R. at 482a-485a.) While Appellants generally allege Ceci and Clebone were "at all times pertinent hereto," acting as agents, servants, employees, representatives, and ostensible agents of the City, (R.R. at 454a.), no material facts have been pleaded which support the allegations with sufficient particularity so as to allow justifiable reliance on the part of Appellants.

Per Section 11.3-306 of the City's Home Rule Charter, "councilmanic authority shall be asserted by the councilmanic body only." (R.R. at 605a.)[5] The

_____

[5] References to the City's Home Rule Charter appear throughout Appellants' Second Amended Complaint. (R.R. at 457a-459a, 461a, 497a-498a.) Appellants allege misrepresentations by Ceci and Clebone were made in derogation of their obligations as set forth in the Home Rule Charter. *Id.* These misrepresentations form the basis for Appellants' claims. Appellants failed to attach a copy of the Home Rule Charter to the Second Amended Complaint. Mirizio, however, attached a copy of this document to the preliminary objections filed in response to the Second Amended Complaint. (R.R. at 602a-631a.) Included with these preliminary objections was a notice to plead. *Id.* at 575a. Where a complaint references the existence of a document to establish

6

specific powers set forth for the City Manager provide he may sign contracts, but he lacks authority to otherwise bind the City. (R.R. at 613a-614a.) "[I]t is a general and fundamental principle of law that persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract…" *Pittsburgh Baseball, Inc. v. Stadium Authority of City of Pittsburgh*, 630 A.2d 505, 509 (Pa. Cmwlth. 1993), quoting *Pittsburgh Paving Co. v. City of Pittsburgh*, 3 A.2d 905, 908 (Pa. 1938). As to Clebone, Appellants have pleaded no facts to support the averment that Clebone, a contractor, had authority to act on behalf of the City or EDP.

Even if this Court assumes as true the facts pleaded by Appellants,[6] Ceci and Clebone still have no authority to bind the City or EDP or act on behalf of either entity. We therefore cannot conclude Appellants have sufficiently pleaded the material facts necessary to support a claim of fraud in the inducement.

The existence of a joint venture, Appellants argue, gives rise to the second and third claims. A joint venture is, generally, a special combination of two or more persons, where, in some specific venture, a profit is jointly sought without

---

a claim but fails to include it as an exhibit, the court may consider such a document when attached to preliminary objections. *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh*, 146 A.2d 724 (Pa. 1958). *See also Martin v. Department of Transportation*, 566 A.2d 969 (Pa. Cmwlth. 1989) (where plaintiff avers the existence of a written agreement and relies upon it to establish his cause of action but fails to attach it to the complaint, the defendant may properly annex that agreement without creating an impermissible speaking demurrer since the agreement is a factual matter arising out of the complaint itself.)

[6] Appellants' factual averments include the City and EDP, by and through Ceci and Clebone representing that the Transaction was a "win-win" for all parties, that the real estate purchased by Appellants was located in a zone which provided better tax benefits, that Ceci represented "they would 'control Mirizio' and that Mirizio 'cannot hurt you on this.'" (R.R. at 458a-460a.) Despite these representations, Appellants aver "the [C]ity did absolutely nothing to keep any of those promises and they did even less to control Mirizio." (R.R. at 202a.)

7

any actual partnership or corporate designation. *McRoberts v. Phelps*, 138 A.2d 439, 443 (Pa. 1958). The existence of a joint venture depends upon what the parties intended in associating together. *Id.* Certain factors are essential to establish a joint venture: 1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; 2) profits must be shared among the parties; 3) there must be a joint proprietary interest and right of mutual control over the subject matter of the enterprise; and there is usually a single business transaction rather than a general and continuous transaction. *Id.* at 443-444. The Transaction at issue involved a loan from EDP to Appellants for purposes of construction of a building. There is nothing in the City/EDP Loan or actions of the parties which suggest they engaged in a "single business for profit." *McRoberts.* No facts are alleged or pleaded which would indicate the City or EDP intended to create a joint venture.

Appellants contend the joint venture was oral in nature and based upon representations made by Ceci and Clebone.[7] As with Count 1, Appellants have failed to sufficiently plead reasonable reliance on any alleged representations made by Ceci and Clebone. Further, the City/EDP Loan executed by all parties contains an entire agreement clause. Amendments must be in writing and signed by all parties. (R.R. at 553a.) We conclude Appellants have not sufficiently pleaded the material facts necessary to support a claim of breach of oral contract.

Appellants' third Count alleges a breach of the fiduciary duty owed by Appellees as a result of the joint venture. As we have concluded no joint venture

---

[7] Appellants set forth the alleged terms and conditions of the oral contract in paragraph 60 of the Second Amended Complaint. One such term is that the City and EDP would "control Mirizio and make certain that he did not delay the Transaction or otherwise do anything to hurt [the Appellants]." (R.R. at 463a.)

was created by the parties, we must likewise conclude no fiduciary duty existed between the parties and, thus, there can be no claim for breach thereof.

## Count 4.  Intentional Interference with
## Existing and Prospective Contractual Relations

Appellants next suggest the delays in finalizing the loans constitute interference with the Transaction. [8]   Appellants allege interference with the Bridgewater Loan and a lease agreement with the future occupant of the building being constructed (Fastenal Lease).  Appellants contend the Bridgewater Loan could not close until the loan with the City/EDP was finalized.

The elements for a cause of action for intentional interference with a contractual relation, whether existing or prospective, are as follows: 1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; 2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; 3) the absence of privilege or justification on the part of the defendant; and 4) the occasioning of actual legal damage as a result of the defendant's conduct. *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987).

Beyond bald assertions that "inordinate, unreasonable and unnecessary delays" were designed to interfere with the Bridgewater Loan, Appellants plead no facts to suggest purposeful action on the part of Appellees which was specifically intended to harm the relationship between Appellants and Bridgewater.  The Bridgewater Loan closed and $217,717.50 of the available loan proceeds were

_____

[8] It should be noted that there are no allegations Appellees breached the terms of the City/EDP Loan.

9

released to Appellants on January 10, 2014. (R.R. at 209a). Appellants aver delay and a claim of harm in "the minimum amount of $548, 123.82," but plead no facts which indicate interference with the Fastenal Lease. (R.R. at 490a.) And while Appellants suggest time was of the essence in regards to the City/EDP Loan due to the existence of other agreements, and Appellants allege all parties were aware of this fact, the City/EDP Loan contains no time-of-the-essence clause.

As to prospective contracts, Appellants allege the City/EDP was approached regarding another project and "[d]espite the fact that the project would be a 'win-win' for all concerned and bring another beautiful, new building, many new jobs and significant additional tax revenue to the City…" the City/EDP have demonstrated "virtually no interest in the project and have taken purposeful action to prohibit [Appellants] from moving forward with the project." (R.R. at 490a.)[9] It is not clear how lack of interest in a project constitutes tortious interference with a prospective contract. Further, Appellants' averments do not indicate the presence of a third party, one of the required elements for a finding of intentional interference with a prospective contract.

Consistent with the prior Counts, Appellants' complaint merely asserts delays on the part of Appellees constitute interference with the Bridgewater Loan and the Fastenal Lease. They do not plead with specificity. With regard to the tortious interference with prospective contracts, Appellants have not come close to establishing a "reasonable likelihood or probability that an anticipated business arrangement would have been consummated," *Cloverleaf Development Inc. v.*

_____

[9] Appellants have averred in paragraph 174 of the First Amended Complaint, incorporated by reference in the Second Amended Complaint, that Bridgewater is "refusing to get involved with the City or EDP on any other transactions or deals as long as Mirizio is their Solicitor." (R.R. at 207a.) As Bridgewater is not a party to the City/EDP Loan, this averment represents but one of the irrelevant and surplus factual averments contained in Appellants' pleading.

10

*Horizon Financial F.A.*, 500 A.2d 163, 167 (Pa. 1985), or the existence of a necessary third party.

Given the above, we must conclude Appellants have not sufficiently pleaded the material facts necessary to support claims for intentional interference with existing and prospective contractual relations.

## Count 5.  Intentional/Negligent Infliction of Emotional Distress

In its next Count, Appellants allege that Appellees knew delays in closing the City/EDP Loan and, consequently, the Bridgewater Loan, would cause Appellant Ricky A. Kennett (Kennett) severe emotional stress.  Appellants allege that the "inordinate, unreasonable, and unnecessary delays and [Appellees'] other actions, inactions and conduct did, in fact, cause Kennett to suffer severe emotional stress," which in turn caused his stroke.  (R.R. at 492a-493a.)  Appellees' conduct was therefore "so extreme and outrageous as to go beyond all possible bounds or human decency and is regarded as atrocious and utterly intolerable in civilized society." *Id.* at 493a.

While Appellants argue that the trial court erred in dismissing Count V, they do not offer a terribly persuasive argument in their brief.  While we do not find the argument waived, it is clear that Count 5 of the Second Amended Complaint fails on the merits.  Appellants' complaint does not aver how mere delay in executing a contract rises to the level of outrageous conduct necessary to state a claim for intentional infliction of emotional distress.  Appellants must be able to demonstrate that Appellees, by extreme and outrageous conduct, intentionally or recklessly caused Kennett severe emotional distress. *Britt v. Chestnut Hill College*, 632 A.2d

11

557, 561 (Pa. Super. 1993). In lieu thereof, Appellants have parroted the language of Section 46(1) of the Restatement (Second) of Torts,[10] that Appellants' delay in executing the City/EDP Loan went beyond all possible bounds of decency, and nothing more.

Appellants allege the delays and misrepresentations by Ceci and Clebone (that they would "control" Mirizio) support a claim for negligent infliction of emotional distress. Negligent infliction of emotional distress is restricted to four scenarios where: 1) the defendant had a contractual or fiduciary duty toward the plaintiff; 2) the plaintiff was subjected to a physical impact; 3) the plaintiff was in a "zone of danger," thereby reasonably experiencing a fear of impending physical injury; and 4) the plaintiff observed a tortious injury to a close relative. *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000). Clearly, the only scenario applicable here is the first one. Appellants have not sufficiently pleaded a fiduciary duty on the part of Appellees. The only duty would be contractual and, beyond the breach of oral contract alleged, Appellants have not alleged or claimed a breach of the City/EDP Loan.

Therefore, Appellants' claims for negligent infliction of emotional distress must fail.

## Count 6.  Negligent Representation

---

[10] Restatement (Second) of Torts § 46 (1965). Paragraph d of the commentary to Section 46 provides that liability for intentional infliction of emotional distress has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all the possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

12

Next, Appellants assert a count of professional malpractice against Mirizio, whom Appellants aver was engaged as their counsel. Appellants have not suggested an express contract with Mirizio existed, but that a "defacto [sic] attorney-client relationship existed between [Appellants] and Mirizio, even if an actual attorney-client relationship did not exist." (R.R. at 495a.)

Absent an express contract, an implied attorney/client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him. *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993).

In support of its claim, Appellants aver that they "paid legal fees and expenses to Mirizio for the representation that he provided." (R.R. at 494a.) Appellants do not dispute that Mirizio was counsel for EDP and the City. Per Section 2.10 of the City/EDP Loan, Appellants were responsible for satisfying "all costs incurred by EDP, including reasonable attorney's fees.[11] (R.R. at 552a.) These sums were more fully set forth in Section 4.13(13)-(14) of the Contract. (R.R. at 555a.)

Here, mere recitation of the elements required to find an implied attorney/client relationship is not sufficient. Appellants have simply averred they sought Mirizio's advice, that advice was within his professional competence, he expressly or impliedly agreed to provide the advice, and they believed he was representing them. There are simply no facts pleaded to support a claim for

---

[11] In paragraph 60(j) of the Second Amended Complaint, Appellants aver that one of the terms of the alleged oral agreement between the parties required payment by Appellants of "attorneys' fees and costs… incurred by the other parties to the Transaction." (R.R. at 463a.)

13

professional malpractice. Appellants' payment of Mirizio's legal fees is easily explained by the terms in the City/EDP Loan and an admitted term of the alleged oral contract.

## Counts 7-8. Vicarious Liability

Appellants' final two counts aver the City and EDP are vicariously liable for the actions of Clebone, Ceci, and Mirizio, as those individuals are agents, servants, employees, representatives, and ostensible agents of the City/EDP. Once again, Appellants have failed to plead facts to support the contention that Clebone, Ceci, and Mirizio are agents of the City/EDP who had authority to bind the City/EDP. They merely restate, as they did throughout the prior 300-odd paragraphs, that those individuals were acting as "ostensible agents of" the City and EDP. (R.R. 498a.) Serial regurgitation of an averment throughout dozens of paragraphs does not constitute disclosure of "the material facts sufficient to enable the adverse party to prepare his case." *General State Auth.* Given the absence of well-pleaded facts to support Appellants' claims, it does not appear the City or EDP can be vicariously liable for the actions of Ceci, Clebone, or Mirizio.

## Conclusion

The trial court did not err in dismissing the Second Amended Complaint as it does not plead facts essential to support Appellants' claims. The Second Amended Complaint is no more concise or coherent than the prior two iterations.[12]

_____

[12] Counted among the factual averments contained in Appellants' Second Amended Complaint are statements that "[o]ne of the attorneys who was in attendance at the closing when Mirizio refused to close the Transaction and EDP Loan told [Appellants] that it was one of the

14

Such a conclusion begs the question whether Appellants should be permitted to amend. Based on the facts presented, or lack thereof, it does not seem likely facts exist which support Appellants' claims, or such facts would have been pleaded earlier. Amendments may be properly denied where it appears amendment is futile. *Weaver*. We agree with Appellants, however, that "putting a party out of court" under the circumstances of this case "is a draconian result …" (Appellants' brief at 19.) But our agreement must not be read as license to again engage in the pleading method employed thus far. If this warning is not heeded, Appellants should expect no quarter at either the trial or appellate level. For these reasons, the order of the trial court sustaining Appellees' preliminary objections and dismissing Appellants' Second Amended Complaint is affirmed. The decision dismissing this matter with prejudice is vacated. This case is remanded to the trial court for proceedings consistent with this opinion.

_____
JOSEPH M. COSGROVE, Judge

---

most unprofessional things he had ever seen an attorney do," and "as was his typical modus operandi, Mirizio was doing whatever he wanted, whenever and however he wanted to do it, without any regard for his clients' best interests or instructions…" (R.R. at 204a-205a, 209a.) Appellants further averred that "Mirizio assumed that, because Kennett had formed Bitter Sweet and BSP to consummate the Transaction and Loans, he 'must be dirty' and 'must be hiding something.'" *Id.* at 209a.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bitter Sweet Properties, LP; BSP Inc.; | : | |
| Somerset Enterprises Inc. d/b/a Future | : | |
| Building of America; and Ricky A. | : | |
| Kennett, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| The City of Farrell; Shenango Valley | : | |
| Economic Development Partnership | : | |
| Committee for and on Behalf of the | : | |
| City of Farrell and also surrounding | : | |
| communities in the Shenango Valley | : | |
| Participating in the Shenango Valley | : | |
| Economic Development Partnsership; | : | No. 1640 C.D. 2016 |
| and Stephen J. Mirizio, Esquire | : | |

## O R D E R

AND NOW, this 20th day of October, 2017, the June 27, 2016 order of the Court of Common Pleas of Mercer County (trial court) is hereby affirmed in part and vacated in part. To the extent the trial court sustained Appellees' preliminary objections and dismissed Appellants' Second Amended Complaint, the order is affirmed. To the extent the trial court dismissed the matter with prejudice, the order is vacated. This case is remanded to the trial court for proceedings consistent with this opinion. Jurisdiction is relinquished.

_____
JOSEPH M. COSGROVE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bitter Sweet Properties, LP; : 
BSP Inc; Somerset Enterprises Inc. : 
d/b/a Future Building of America; : 
and Ricky A. Kennett, : 
                          Appellants : 
                                 : 
                v. : 
                                   : 
The City of Farrell; Shenango : 
Valley Economic Development : 
Partnership Committee for and on : 
Behalf of the City of Farrell and also : 
surrounding communities in the : 
Shenango Valley Participating : 
in the Shenango Valley Economic : 
Development Partnership; :   No. 1640 C.D. 2016
and Stephen J. Mirizio, Esquire :   Submitted: January 27, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

CONCURRING/DISSENTING OPINION
BY JUDGE COVEY                           FILED: October 20, 2017

        I concur with the Majority's ruling affirming the Mercer County Common Pleas Court's (trial court) order sustaining the preliminary objections filed by the City of Farrell (City), Shenango Valley Economic Development Partnership Committee for and on behalf of the City and surrounding communities in the Shenango Valley participating in the Shenango Valley Economic Development Partnership (EDP), and Stephen J. Mirizio, Esquire (Mirizio) (Appellees). However, I respectfully dissent from the Majority's decision vacating the trial court's order dismissing with prejudice the Second Amended Complaint filed by Bitter Sweet

Properties, LP, BSP Inc., Somerset Enterprises Inc. d/b/a Future Building of America, and Ricky A. Kennett (Appellants) and remanding the matter to the trial court for further proceedings.

Appellants filed a civil action with the trial court on May 12, 2015. The complaint, which contained **280 separate paragraphs**, included eight counts alleging fraudulent inducement, breach of oral contract, breach of fiduciary duty, intentional interference with contractual relations, intentional/negligent infliction of emotional distress, professional negligence and negligence per se against Mirizio, and vicarious liability against the City and EDP. Appellees filed preliminary objections. The trial court sustained the preliminary objections and dismissed the complaint, stating that the complaint's rambling narrative and evidentiary averments failed to comply with the requirements of Pennsylvania Rule of Civil Procedure No. (Rule) 1019, subsections (a), (b), (f), (h) and (i).

On November 5, 2015, Appellants filed an amended complaint (First Amended Complaint). The First Amended Complaint included **320 paragraphs, many of which contained subparagraphs**. Appellees filed preliminary objections to Appellants' First Amended Complaint, after which Appellants filed a second amended complaint (Second Amended Complaint). The Second Amended Complaint, filed January 7, 2016, contained **229 paragraphs and incorporated by reference 89 paragraphs from the First Amended Complaint**. Appellees filed preliminary objections to the Second Amended Complaint. **Appellants did not thereafter file a third amended complaint nor did they seek leave to amend**. On June 27, 2016, the trial court sustained Appellees' preliminary objections and dismissed the Second Amended Complaint with prejudice, concluding it failed to conform to Rule 1019(a) because Appellants failed to plead or produce a contract of engagement for legal services with Mirizio, failed to plead facts that evidence the

creation of a joint venture relationship, and failed to plead facts to support the remaining causes of action.

> Initially,
>
> [e]xcept where an amendment is allowed as of course under [Rule] 1028[(c)(1) ('A party may file an amended pleading as of course within twenty days after service of a copy of preliminary objections.')], or granted as of right under other provisions of the Rules of Civil Procedure, [i.e., Rule 1033 ('either by filed consent of the adverse party or by leave of court')], the trial court has discretion of whether to allow amended pleadings. Moreover, we will not reverse the decision of the trial court in the absence of a clear abuse of discretion. Amendments are liberally permitted in order to allow full development of a party's theories and averments. However, amendments may be denied where there is prejudice or surprise to the opposing party. Also, an amendment is properly refused where it appears amendment is futile.

*Weaver v. Franklin Cty.,* 918 A.2d 194, 203 (Pa. Cmwlth. 2007) (citations omitted).

In the instant case, the trial court opined:

> During the course of these three complaints, [Appellants] have asserted a duplicity of factual pleadings, (all made under verification), which state inconsistent facts some of which constitute judicial admissions. These inconsistent pleadings belie the veracity of the facts stated and must be considered in determining whether or not a valid cause of action has been pleaded.
>
> I have considered each of the counts and observe, inter alia, the following:
>
> COUNT VI – PLAINTIFFS V. STEPHEN I. MIRIZIO, ESQUIRE purports to allege professional negligence, but fails to plead or produce a contract of engagement for services. COUNTS VII and VIII - PLAINTIFFS V. DEFENDANTS CITY OF FARRELL, AND EDP alleges vicarious liability based upon the action of [] Mirizio and two non-party employees of the City . . . but fails to properly plead the basis for finding an underlying cause of action. COUNTS IV and V - claim intentional interference

with contractual relations and intentional infliction of emotional distress with an additional bald allegation for punitive damages without well pleaded facts to support tortious conduct on the part of any of the Defendants. COUNTS I, II and III PLAINTIFFS V. CITY OF FARRELL AND EDP allege fraudulent inducement, breach of oral contract involving real estate, the creation of a joint venture relationship without any written contract - Typical of the pervasive conjecture and hypothesized averments of the Plaintiffs' pleadings is a self-serving statement that 'Furthermore, Plaintiffs surrendered to Defendants substantial control over its affairs, and vested Defendants with actual or apparent authority to carry out Plaintiffs' interests['] . . . .

Trial Court Op. at 2-3. I agree with the trial court's sound reasoning. As stated by the Majority: "Based on the facts presented, or lack thereof, it does not seem likely facts exist which support Appellants' claims, or such facts would have been pleaded earlier. Amendments may be properly denied where it appears amendment is futile. *Weaver.*" Majority Op. at 15.

Moreover, I recognize, in the interest of judicial economy, that if Appellants are permitted to amend a fourth time, the same facts will be presented to which Appellees will be forced to review and for the fourth time prepare preliminary objections. Once again, the trial court will have to review and prepare a decision and order which it has already done twice and upon appeal therefrom this Court will similarly need to again review and write an opinion and order. Thus, "a consideration of . . . our interests in judicial economy and in conserving the time and interest of the litigants militate in favor of our" dismissing Appellants' complaint with prejudice. *Temple Univ. of Commonwealth Sys. of Higher Educ. v. Pa. Dep't of Pub. Welfare,* 374 A.2d 991, 996 (Pa. Cmwlth. 1977).[1] It is clear after three complaints containing between 280 and 320 paragraphs, that Appellants have no further facts to support

---

[1] We recognize that this case relates to the taking of equity jurisdiction to avoid the multiplicity of actions, however, the same considerations apply here.

AEC - 4

their allegations.  Thus, I am "constrained to find that there is no way the pleading can be cured by an amendment.  Where there is no possibility of recovery under a better statement of the facts, leave to amend need not be granted.  Accordingly, [I would] affirm the decision of the trial court." *Jones v. City of Phila.,* 893 A.2d 837, 846 (Pa. Cmwlth. 2006).[2]

_____
ANNE E. COVEY, Judge

---

[2] In *Jones,* as here, the trial court sustained preliminary objections to the appellants' complaint and dismissed the complaint with prejudice.  The appellants argued that the trial court abused its discretion in failing to allow them to amend their complaint.